GEORGE W. ALLEN, Jr., MARY E. HOCKER, PAUL J. RICHERT and LOUISE R. CONLEY, Appellants, v. STATE OF NEVADA; PUBLIC EMPLOYEES RETIREMENT BOARD OF THE STATE OF NEVADA; DARREL DAINES, SAM A. PALAZZOLA, L. RUSS CULBERTSON, WILLIS A. DEISS, PEGGY GLOVER, BOYD D. MANNING and TOM WEISNER, Members of the Public Employees Retirement Board of the State of Nevada and VERNON BENNETT, Executive Officer of the Public Employees Retirement Board of the State of Nevada, Respondents.

No. 14703

February 24, 1984 676 P.2d 792

---

*Fred W. Kennedy,* Las Vegas, for Appellants.

*Brian McKay,* Attorney General, *William E. Isaeff,* Deputy Attorney General, Carson City; *Scott Doyle,* Deputy Attorney General, Clark County, for Respondents.

**OPINION**

*Per Curiam:*

This is an appeal from a district court order granting summary judgment in a class action suit. We have concluded that summary judgment in favor of respondents was appropriate.

Appellants brought a class action suit on behalf of approximately 750 duly qualified participants in the Public Employees' Retirement System (PERS) who retired prior to May 19,

1977 with at least twenty years of service (early retirees). Prior to 1977, an early retiree's monthly retirement allowance was calculated by multiplying his or her average compensation by 2½ percent for each of the first twenty years of service plus 1½ percent for each year thereafter up to thirty years. In 1977, the Nevada Legislature amended NRS 286.551, the statute setting forth the allowance calculation formula, making the multiplication factor 2½ percent for each of the first thirty years.[1] The 1 percent increase for the twenty-first through thirtieth years was made retroactive, but only for participants who retire after the effective date (May 19, 1977) of the amendment (late retirees).[2]

After appellants filed their amended complaint, the trial court certified the case as a class action pursuant to NRCP 23(b)(2). Appellants then filed a motion for summary judgment. Respondents opposed the motion and filed a cross-motion for summary judgment. The district court thereafter entered judgment in favor of respondents. Appellants contend on appeal that the amendment increasing only the benefits of late retirees is prohibited by the Due Process, Equal Protection and Impairment of Contract Clauses of the United States Constitution and that material issues of fact remain which also mandate reversal of the summary judgment. We do not agree.

 ██

Initially, we reiterate the heavy burden appellants must bear to overcome the presumption of constitutional validity which every legislative enactment enjoys. We recently stated in List v. Whisler, 99 Nev. 133, 137-38, 660 P.2d 104, 106 (1983), that:

> Our analysis . . . begins with the presumption of consitutional validity which clothes statutes enacted by the Legislature. *Viale v. Foley,* 76 Nev. 149, 152, 350 P.2d 721 (1960). All acts passed by the Legislature are presumed to be valid until the contrary is clearly established. *Hard v. Depaoli et al.,* 56 Nev. 19, 26, 41 P.2d 1054 (1935). In case of doubt, every possible presumption will be made in favor of the consitutionality of a statute, and courts will interfere only when the Constitution is clearly violated. *City of Reno v. County of Washoe,* 94 Nev. 327, 333-334, 580 P.2d 460 (1978); *Mengelkamp v. List,* 88 Nev. 542, 545, 501 P.2d 1032 (1972); *State of Nevada v. Irwin,* 5 Nev. 111 (1869). Further, the presumption of consitutional validity places upon those attacking a statute the

---

[1] The amendment is contained in Section 37 of Chapter 594 of the 1977 Statutes of Nevada.

[2] The amendment is contained in Section 53 of Chapter 594 of the 1977 Statutes of Nevada.

burden of making a clear showing that the statute is unconstitutional. *Ottenheimer v. Real Estate Division,* 97 Nev. 314, 315-316, 629 P.2d 1203 (1981); *Damus v. County of Clark,* 93 Nev. 512, 516, 569 P.2d 933 (1977); *Koscot Interplanetary, Inc. v. Draney,* 90 Nev. 450, 456, 530 P.2d 108 (1974).

Moreover, when considering the validity of legislation which is under equal protection and due process attack, the state enjoys a wide range of discretion to make reasonable classifications for enacting laws over matters within its jurisdiction. Graham v. Richardson, 403 U.S. 365, 371 (1971).

Appellants attempted to show that the legislative amendment to NRS 286.551 which fixed retroactivity so as to exclude early retirees is unconstitutional on three grounds. First, it is argued that the amendment deprives early retirees of due process of law. Substantive due process guarantees that no person shall be deprived of life, liberty or property for arbitrary reasons. Truax v. Corrigan, 257 U.S. 312, 332 (1921). Appellants contend that the amendment in question represents an arbitrary taking of their property (fund built up by their contributions) and a giving of that property to later retirees, because the legislature had no reasonable basis for retroactively extending enhanced retirement allowances to late retirees only, except to save money.[3]

Respondents correctly assert that it is not necessary for them to demonstrate evidence in the record which would provide a reasonable basis for the amendment. The existence of facts which would support the legislative judgment is presumed. Viale v. Foley, 76 Nev. 149, 155, 350 P.2d 721, 724 (1960). Even if it were necessary for respondents to assume the burden of showing a reasonable basis for the amendment, they have

---

[3]Early retirees offer no evidence that the 1977 Legislature considered the cost of retroactively extending enhanced benefits to early and late retirees before enacting the amendments in question. Early retirees only offer a letter which shows that the PERS Board *in 1979* considered the $24 million price tag to be too excessive to re-amend the statute to include early retirees. Although it could be assumed that the 1977 legislature considered the cost of extending the increased benefits to early retirees as excessive or prohibitive, such an *economic determination provides sufficient* reasonableness to satisfy due process, as long as no invidious distinction is made between the two classes of retirees. *See* Shapiro v. Thompson, 394 U.S. 618, 633 (1969).

done so here. Respondents have submitted an affidavit demonstrating the employee turnover problem the state was suffering during the period when the amendments were considered. Respondents have also declared that the purpose of the amendments was to encourage state employees to remain in government service during this period.[4] The enhanced retirement allowances were offered only to PERS members who were still employed, because only they could be induced to remain in government service. Early retirees had already left government service. Since the asserted purpose of the amendments constitutes, a plausible and rational basis for their enactment, we must conclude that they were not enacted arbitrarily. As we have observed before, "A statutory discrimination will not be set aside if *any state of facts may be conceived* to justify it." Koontz v. State, 90 Nev. 419, 421, 529 P.2d 211, 212 (1974) (emphasis added). The early retirees' contention that the exclusionary amendment deprives them of due process is therefore without merit.

Appellants' second constitutional challenge to the amendment excluding their participation is the increased benefits is that it deprives early retirees of equal protection of the law. Equal protection of the law has long been recognized to mean that no class of persons shall be denied the same protection of the law which is enjoyed by other classes in like circumstances. Truax v. Corrigan, 257 U.S. 312, 336 (1921). In the Matter of McGee, 44 Nev. 23, 189 P. 622 (1920). Early retirees claim that the amendment makes an unconstitutional classification which discriminates against them, vis-a-vis the late retirees.

An equal protection analysis also proceeds with the presumption that the legislation under scrutiny is constitutional. Graham v. Richardson, 403 U.S. 365, 371 (1971). Furthermore, the instant case presents no judicially recognized suspect

---

[4]This purpose is one of the express objectives behind maintaining the PERS in Nevada, as set forth in NRS 286.015(1), which states, in pertinent part:

*Declaration of state policy; purpose of chapter.*

1. It is the policy of this state to provide, through the public employees' retirement system:

. . . .

(c) A system which will make government employment attractive to qualified employees in various categories of service and which will encourage these employees to remain in government service for such periods of time as to give the public employer full benefit of the training and experience gained by these employees while employed by public employers.

class or fundamental right which would warrant a greater prospect of our intervention under a standard of strict scrutiny.[5] Likewise, it presents no quasi-suspect class such as sex, illegitimates or the poor, which would actuate the application of a mid-range or intermediate level of scrutiny of the legislative purpose and classification. We are thus left with the rather benign and deferential prospect of scrutinizing the challenged legislation for foundational support containing an ingredient of rational basis. Under such a standard, the intervention of this Court is withheld if, under any conceivable scenario, the classification by the legislature of early retirees vis-a-vis late retirees bears a rational relationship to the achievement of a legitimate legislative purpose. This Court may not, under such a standard, superimpose its own preferences on the work product of a coordinate branch of government. In this regard, the United States Supreme Court, in Vance v. Bradley, 440 U.S. 93 (1979), has announced our position as follows:

> The constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

440 U.S. at 97 (footnote omitted). Indeed, laws such as those in the instant case which deal with economic matters satisfy equal protection, though they are imperfect, if the classification has some "reasonable basis." Dandridge v. Williams, 397 U.S. 471, 485 (1970).

As noted previously, a rational basis can be identified in the two amendments in the form of an incentive for state employees to remain in government service, an incentive which would have no effect on members who have already retired. Because there is a reasonble basis for creating the classification between early and late retirees, the amendment in question satisfies the Equal Protection Clause. Although the effect of the amendment may seem unfair, all legislation necessarily involves line-drawing. But as long as there is a rational basis for the

---

[5]While the right to pursue a lawful occupation is a fundamental right, Smith v. Texas, 233 U.S. 630 (1914), a right to retirement funds as a source of individual and familial support has not been so recognized.

distinction drawn, it must be upheld. *See* Mengelkamp v. List, 88 Nev. 542, 501 P.2d 1032 (1972). Moreover, we emphasize anew that it is not our prerogative to substitute our judgment for that of the legislature. Exxon Corporation v. Governor of Maryland, 437 U.S. 117, pp. 124-25 (1978).

Thirdly, appellants challenge the constitutional validity of the combined amendments on the ground that they consitute an impairment of contracts.[6] We have recognized that public employment contracts are within the ambit of the contract impairment clause and that early retirees have a vested right to their retirement allowances, which cannot be impaired or modified to their disadvantage without a comparable new advantage.[7] Public Employees Retirement Board v. Washoe County, 96 Nev. 718, 615 P.2d 972 (1980). The appellants, however, have failed to demonstrate how early retirees' allowances have been negatively affected. Early retirees are still entitled to the same retirement allowances as before the amendment; they simply do not receive the "raise" provided to late retirees. Early retirees nevertheless contend that late retirees' "raise" will more swiftly deplete the PERS fund. No evidence was offered to support this contention. Respondents, on the other hand, offered evidence that the PERS fund is not in danger of depletion, as new benefits are not granted by the PERS Board unless they are actuarily funded. Moreover, the respondents' *contractual obligation* to fund early retirees' retirement allowances according to their vested rights, whether through PERS contributions or other means, is unaffected by the amendments is question. For these reasons, appellants' constitutional freedom from contract impairment has not been harmed by passage of the amendments to NRS 286.551.

Appellants' final contention is that the summary judgment was improper because a question of fact remains in dispute. They claim now that the effect of the amendments, which increased late retirees' retirement allowances, on PERS funds

---

[6] *See* Article I, Section 10 of the United States Constitution and Article I, Section 15 of the Nevada Constitution.

[7] NRS 286.6793(1) states:

1. All retirement allowances or benefits for survivors offered pursuant to this chapter become vested on the date that the employee completes 10 years of creditable service or become entitled to begin receiving such benefits or on the date of his death, whichever event occurs first. Unless otherwise specifically provided by the amendatory act, any change in the provisions of this chapter is retroactive for all service of any member prior to the date of vesting, but no such change may impair any vested allowance or benefit.

is disputed. Assuming, *arguendo,* that this claim raises a legitimate question of fact, resolution of the question in appellants' favor would not alter our analysis of the constitutional issues raised, because the rational basis for the amendments and the state's obligation to fund early retirees' allowances remain unaffected. Moreover, appellants raise this issue on the unsupported assertion that the amendments will adversely affect PERS funds. Respondents offered evidence that new benefits must be actuarily funded. Because early retirees, in order to oppose summary judgment, "may not rest upon the mere allegations of [their] pleadings, but must, by affidavit or otherwise, set forth facts demonstrating the existence of a genuine issue for trial," Bird v. Casa Royale West, 97 Nev. 67, 70, 624 P.2 17, 19 (1981), we find that they have not shown that a genuine issue of fact remains in dispute.

For the foregoing reasons, we have concluded that appellants' challenge of the district court's order granting summary judgment is without merit.

The order granting summary judgment is affirmed.