OPINION
 

 Per Curiam:
 

 FACTS
 

 In July 1994, the Washoe County Board of County Commissioners (“the Board”) undertook a review of the compensation of its elected constables. At the time, the constables received a minimum base salary of $10,000.00 and kept all fees they collected from citizens for their services.
 

 Washoe County’s staff recommended amending the constables’ compensation by providing that once the constables’ base salary and net revenues for services reached $55,000.00, the constables would then forward fifty percent of the net fees collected to the county. In a July 1994 order, the Board approved the $10,000.00 base salary without mentioning fee splitting above $55,000.00.
 

 After confusion arose as to the constables’ compensation plan, the Board expressly restated the fee sharing formula previously recommended by Washoe County’s staff. On April 11, 1996, the Board issued an amended order, expressly adopting the fee formula. On August 9, 1996, the Board voted to reaffirm its understanding that the July 1994 order included the prior recommendations of its staff requiring the constables to abide by the fee sharing formula.
 

 
 *117
 
 Appellants John Langon, former Sparks constable, and Ward Peterson, former Reno constable, refused Washoe County’s demand to abide by the fee sharing formula and to provide financial reports for the purposes of fee apportioning. Washoe County then brought suit against the constables seeking injunctive and declaratory relief requiring a full accounting and payment of fifty percent of the fees collected above $55,000.00. The constables counterclaimed, asserting that Washoe County was not authorized to cap their compensation and require them to share fees with the county. The accounting issues were later resolved by consent decree, wherein the constables acknowledged Washoe County’s authority to examine and audit their office financial records.
 

 In March 1998, the parties filed cross-motions for partial summary judgment concerning the substantive issues. To avoid litigating the amount of fees in question, the parties entered a stipulation for entry of consent judgment in April 1998. The stipulation provided that if Washoe County was found to have the authority to fix the constables’ maximum compensation, judgment could be entered against John Langon for $100,000.00 and against Ward Peterson for $43,000.00.
 

 In May 1998, the district court denied the constables’ motion and granted Washoe County’s motion. In June 1998, pursuant to the parties’ previous stipulation, the district court entered judgment against Langon for $100,000.00 and against Peterson for $43,000.00.
 

 The constables now appeal the district court’s ruling that Washoe County had the authority to set their maximum compensation and the district court’s entry of the money judgment.
 

 DISCUSSION
 

 The constables argue that the district court erred by ruling that NRS chapter 258 authorizes Washoe County to require fee sharing after the constables’ compensation reaches $55,000.00. Specifically, the constables argue that the legislature, not the county, possesses the authority to fix their compensation, and that the legislature granted Washoe County only the authority to set the constables’
 
 minimum
 
 compensation.
 

 NRS chapter 258 governs matters concerning Nevada’s constables. At issue in the present case is the interpretation of two sections of chapter 258: NRS 258.040 and NRS 258.125. NRS 258.040 provides that the boards of county commissioners shall fix the constables’ “minimum” compensation in the year in which the constables are elected. However, the section goes on to provide that the boards “may thereafter increase or change such compensation during the term but shall not reduce it below the minimum so established.”
 
 See
 
 NRS 258.040(1). NRS 258.125
 
 *118
 
 provides that constables are “entitled” to receive fees for certain enumerated services.
 
 [1]
 

 The construction of a statute is a question of law subject to de novo review.
 
 See
 
 State, Dep’t of Mtr. Vehicles v. Lovett, 110 Nev. 473, 476, 874 P.2d 1247, 1249 (1994). It is well established that when interpreting a statute, “ ‘[t]he meaning of words used in a statute may be sought by examining the context and by considering the reason or spirit of the law or the causes which induced the legislature to enact it. The entire subject matter and the policy of the law may also be involved to aid in its interpretation, and it should always be construed so as to avoid absurd results.’ ” Moody v. Manny’s Auto Repair, 110 Nev. 320, 325, 871 P.2d 935, 938 (1994) (quoting Welfare Div. v. Washoe Co. Welfare Dep’t., 88 Nev. 635, 637-38, 503 P.2d 457, 458-59 (1972)).
 

 When more than one interpretation of a statute can reasonably be drawn from its language, it is ambiguous and the plain meaning rule has no application.
 
 See
 
 Hotel Employees v. State, Gaming Control Bd., 103 Nev. 588, 591, 747 P.2d 878, 880 (1987). Further, “ ‘no part of a statute should be rendered nugatory, nor any language turned to mere surplusage, if such consequences can properly be avoided.’ ” Paramount Ins. v. Rayson & Smitley, 86 Nev. 644, 649, 472 P.2d 530, 533 (1970) (quoting Torreyson v. Board of Examiners, 7 Nev. 19, 22 (1871)). “Courts must construe statutes ... to give meaning to all of their parts and language .... The court should read each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation.’ ’ Bd. of County Comm’rs v. CMC of Nevada, 99 Nev. 739, 744, 670 P.2d 102, 105 (1983).
 

 In the present case, the constables argue that a plain meaning construction of the statute is appropriate. They assert that the use of the word ‘ ‘minimum’ ’ is a clear indication that the legislature did not intend that any board of county commissioners would set the maximum compensation. Indeed, the constables provide dictionary definitions of both the words “minimum” and “maximum,” noting that “minimum” is the opposite of the word “maximum.” The constables argue further that the legislative intent must be to prohibit the setting of a maximum compensation
 
 *119
 
 for constables; otherwise, the legislature would have included explicit language granting such permission. We conclude that the constables’ argument is without merit and that a plain meaning reading of the statute is inappropriate.
 

 A plain meaning construction of the statute as proposed by the constables is flawed because there is ambiguity between NRS 258.040 and NRS 258.125. If NRS 258.125 gives constables an absolute right to keep all fees collected, as the constables propose (see footnote 1,
 
 supra),
 
 then NRS 258.040 cannot confer upon the board of county commissioners the power to “change” the constables’ compensation, if such a change would affect the retention of fees. Such a reading would render portions of NRS 258.040 (and other sections of chapter 258) meaningless.
 

 We conclude that to give full meaning to all of chapter 258, Washoe County must have the authority to adjust the constables’ compensation, without decreasing it below the established minimum. The very fact that the legislature does not explicitly prohibit setting a maximum compensation indicates that the legislature intended to empower the boards of county commissioners to maintain control of the constables’ compensation, as long as the compensation is not decreased below the established minimum. Under such a reading, NRS 258.125 necessarily must permit the constables to collect the stated fees, but the county must ultimately establish how the fees are divided.
 

 Moreover, NRS 258.040 contemplates the setting of a constable’s compensation through the use of a salary, fees,
 
 or both. See
 
 NRS 258.040(1). Additionally, the statute explicitly states that the constables’ compensation may be “changed” during the constables’ term.
 
 See id.
 
 This language is indicative of the conference upon the counties the power to modify the constables’ compensation, as long as it is not decreased below the established minimum.
 

 Furthermore, we conclude that it would be absurd and nonsensical to read NRS 258.040 as stating that the county boards may “change” the constables’ compensation, but only by increasing the minimum. If that were the intent, it could have been clearly stated. The policy and spirit of this law is to establish a reasonable pay scale for constables, while granting the various counties (as employers) the right to exert some degree of control over the compensation provided.
 

 Accordingly, we conclude that NRS chapter 258 must be read to allow the counties to adjust or fix the constables’ maximum compensation, and that NRS 258.125 does not grant the constables the absolute right to keep all the fees they collect. Therefore, we conclude that the district court did not err in ruling that Washoe County had the authority under NRS chapter 258 to
 
 *120
 
 require fee sharing of all fees collected once the constables’ compensation reached $55,000.00.
 

 Next, the constables argue that the district court erred by entering a money judgment against them before all legal issues were resolved. They assert that once the district court ruled that Washoe County had the authority to fix the constables’ compensation, it then had to determine whether that authority was properly exercised before entering a money judgment. We conclude that the constables’ argument on this issue is without merit.
 

 As discussed above, the district court’s ruling clearly resolved all issues concerning Washoe County’s authority under NRS chapter 258. Additionally, the stipulation for entry of consent judgment explicitly states that “in the event [the district court] enters an order or declaratory judgment finding that Washoe County has the authority to fix the maximum compensation payable to Defendants Langon and Peterson . . . , then the parties agree that judgment may be entered against Defendants . . . .” The event contemplated in the parties’ stipulation occurred, and the district court entered judgment according to their agreement. Appellants provide no reasonable justification explaining how the district court’s entry of money judgment is in violation of the terms of the stipulation. Accordingly, we conclude that the district court did not err in entering a money judgment against the constables.
 
 [2]
 

 Accordingly, we affirm the district court’s ruling in all respects.
 

 [1]
 

 In a separate argument, the constables also argue that the word “entitled” in NRS 258.125 gives them an absolute right to keep all fees collected. However, we conclude that a resolution of the present issue necessarily resolves this additional issue.
 

 [2]
 

 The constables also argue that the orders issued by the Board amending the constables’ compensation were not valid. We conclude that the constables waived their right to argue this issue when they stipulated to entry of consent judgment. As the district court noted in its order dated August 6, 1998,
 

 [cjounsel for Defendants can not [sic] now attempt to insert additional terms or conditions which were not explicitly contained in a valid stipulation. Additionally, the Court will not entertain further argument on issues which should have been raised by Defendants [sic] counsel before the parties vacated their trial. Counsel requested that all issues in this case be resolved by stipulation and/or the Court’s decision on the cross-motions .... Defendants cannot now avoid the consequences of the acts or omissions of their attorney.
 
 See
 
 Pioneer Investment Services v. Brunswick Associates, 507 U.S. 380, 396 (1993).
 

 We agree with the district court and decline to address this issue.